**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

**Dated: July 28, 2009**

Jeffery P. Hopkins
United States Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| In re:<br><br>**BEREAN CHRISTIAN STORES, LLC**<br>**9415 Meridian Way**<br>**West Chester, OH 45069**<br><br>**a Delaware limited liability company,**<br><br>Debtor.<br><br>**Employer Tax I.D. No. 20-4890647** | Chapter 11<br><br>Case No. 09-13640<br><br>Honorable Jeffery P. Hopkins |

**ORDER PURSUANT TO SECTIONS 105, 363 AND 365 OF THE
BANKRUPTCY CODE (A) AUTHORIZING THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTOR'S ASSETS, FREE AND CLEAR OF LIENS,
CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (B) APPROVING
ASSET PURCHASE AGREEMENT; (C) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OR REJECTION OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF**

**THIS MATTER** is before this Court on the *Debtor's Motion for Order Pursuant to*

*Sections 105, 363, 365, 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rules 2002 and*

*6004 (A) Approving Procedures for Consideration of Alternative Investment or Sale Proposals;*
*(B) Approving the Break-Up Fee and Expense Reimbursement; (C) Scheduling an Auction and*
*Hearing to Approve the Transaction and Approving the Form and Manner of Notice Thereof;*
*and (D) Establishing Procedures Relating to the Rejection or Assumption and/or Assignment of*
*Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts* (the
"Motion")[1] (Doc. No. 45); the Motion and notice of the Motion having been served upon: (i) the
Office of the United States Trustee for the Southern District of Ohio; (ii) counsel for the DIP
Term Lender and the Buyer; (iii) Financial Resource Associates, Inc.; (iv) holders of the 25
largest unsecured claims; (v) counsel for the Official Committee of Unsecured Creditors (the
"Committee"); (vi) parties to all unexpired executory contracts and leases; and (vii) any
governmental unit listed in LBR 5003-1(d); and it appearing that due, proper and adequate notice
of the Motion has been given and that no other or further notice is required under the facts and
circumstances; and after due deliberation thereon; and good and sufficient cause appearing
therefore**:**

### NOW, THEREFORE, THE COURT HEREBY FINDS THAT:[2]

A.   **Basis For Section 363 Sale**

1.      To maximize the value of the Purchased Assets[3] for the chapter 11 bankruptcy

---

[1] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the asset purchase agreement, as amended (the "Asset Purchase Agreement") entered into between the Debtor and Berean Christian Stores Endeavor, LLC (the "Buyer"). As a result of the bidding at the Auction, the Debtor and the Buyer have amended the Asset Purchase Agreement to reflect the additional consideration being paid by the Buyer.

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[3] For purposes of this Order, and as set forth in the Asset Purchase Agreement, **"Purchased Assets"** means "all assets, properties, rights, titles and interests of every kind and nature owned, leased or licensed by Seller or any of Seller's Affiliates, including, without limitation, all (i) Books and Records, (ii) Assumed Contracts and all of the rights and benefits accruing thereunder, including any outstanding deposits thereunder, (iii) Equipment, (iv) Fixtures, (v) Inventory, (vi) Intellectual Property, (vii) transferable Permits, (viii) Security Deposits, (ix) Supplies, (x) Accounts Receivable, (xi) advertising, marketing and promotional materials and all other printed or written materials, (xii) goodwill as a going concern and all other intangible properties, (xiii) telephone numbers, (xiv)

2

estate, it is essential that the sale of the Purchased Assets (the "Sale") to the Buyer occur within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence in consummating the Sale to the Buyer.

2.     The Purchased Assets are property of the Debtor's chapter 11 bankruptcy estate and the Debtor is authorized to issue a bill of sale to the Buyer for the Purchased Assets and to sell the Purchased Assets free and clear of any and all liens, claims, encumbrances and interests, pursuant to section 363(f) of the Bankruptcy Code, with all such liens, claims, encumbrances and interests attaching to the net sale proceeds of the Purchased Assets to the extent applicable.

B.     **Jurisdiction, Final Order And Statutory Predicates**

1.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. §158(a). To any extent necessary under Rule 9014 of the Federal Rules of Bankruptcy Procedure and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Rule 7054 of the Federal Rules of Bankruptcy Procedure, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

3.     This proceeding is a "core proceeding" within the meaning of 28 U.S.C. §157(b)(2)(A), (N) and (O).

---

(continued…)

insurance policies and the proceeds thereof, (xv) other tangible and intangible assets, and (xvi) claims and causes of action Seller may have against third parties directly related to any of the foregoing items; in each case excluding any assets that are expressly identified as Excluded Assets."

CINLibrary 0117166.0567650 1989670v6

4. The Sale to the Buyer of the Purchased Assets constitutes a sale of property of the Debtor's chapter 11 bankruptcy estate outside the ordinary course of business of the Debtor within the meaning of section 363(b) of the Bankruptcy Code.

C. **Notice of Sale of the Purchased Assets**

1. The Bid Procedures Order approved by this Court (Doc. No. 98) was served upon: (i) the Office of the United States Trustee for the Southern District of Ohio; (ii) counsel for the DIP Term Lender and the Buyer; (iii) Financial Resource Associates, Inc.; (iv) counsel for the Official Committee of Unsecured Creditors; (v) holders of the 25 largest unsecured claims; and (vi) any governmental unit listed in LBR 5003-1(d).

2. The *Notice of Auction and Sale Hearing in Connection with the Sale of All or Substantially All of the Assets of Berean Christian Stores, LLC* (the "Sale Notice"), approved by this Court pursuant to the Bid Procedures Order, was served upon: (i) the Office of the United States Trustee for the Southern District of Ohio; (ii) counsel to the DIP Term Lender and the Buyer; (iii) counsel to the Official Committee of Unsecured Creditors; (iv) holders of the 25 largest unsecured claims; (v) any governmental unit listed in LBR 5003-1(d); (vi) all creditors listed on the creditors matrix; (vii) all parties that have filed a Notice of Appearance in this case; (viii) all parties known to the Debtor who have, or may have asserted liens against any of the Debtor's assets; (ix) all parties which have contracts or leases that may be subject to assumption or rejection in accordance with 11 U.S.C. § 365; and (x) all potential bidders known to the Debtor.

3. Notice of the Motion, the Bid Procedures Order and the Sale having been given as described above, is proper, timely, adequate, sufficient and proper under the circumstances and no other or further notice is required.

CINLibrary 0117166.0567650 1989670v6

4.     A reasonable opportunity to object or to be heard with respect to the Motion and the relief requested in the Motion, and the rights of third parties to submit higher and better offers for the Purchased Assets in accordance with the bidding procedures approved by this Court has been afforded to all interested persons and entities.

D.     **Good Faith Of Buyer**

1.     The Buyer is a third party purchaser unrelated to the Debtor, the current or former officers, directors and equity holders of the Debtor.  Consequently, the Buyer has not been and is not, at any time or in any way, (a) an "Insider," as defined in 11 U.S.C. § 101(31), of the Debtor or any shareholders or equity holder(s) of the Debtor or (b) a shareholder or equity holder of any of the Debtor.  As disclosed at the Auction, the Buyer has received certain credit enhancements in connection with the Sale and after the Closing from Standex International Corporation, an unsecured creditor of the Debtor and a member of the Committee.

2.     The Buyer is purchasing the Purchased Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and the Buyer is therefore entitled to the protections of section 363(m) of the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with this chapter 11 case and the Sale in that: (a) the Buyer recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; (b) the Buyer complied in all respects with the provisions in the Bid Procedures Order; (c) the Buyer in no way induced or caused the chapter 11 filing of the Debtor; (d) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (e) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (f) the negotiation and execution of the Asset Purchase Agreement and any other agreements or instruments related thereto was in good faith.

5

E.    **Competing Offers**

1.    The Debtor received three (3) Qualifying Bids (as defined in the Motion), other than the bid submitted by the Buyer for the Purchased Assets. The Qualifying Bids were received from Gordon Brothers Retail Partners, LLC, Hilco Merchant Resources, LLC, and Hudson Capital Partners, LLC.

2.    Pursuant to the Bid Procedures Order, an Auction was held on July 24, 2009 at 10:00 a.m. (prevailing Eastern Time) at the offices of counsel for the Debtor. At the Auction, there were numerous rounds of competitive bidding. As set forth in the Debtor's *Notice Identifying the Successful Bidder in Accordance with the Bid Procedures Order* (Doc. No. 132), the Buyer was the Successful Bidder and Hilco Merchant Resources, LLC was identified as the Back-Up Bidder.

F.    **Approval Of the Motion**

1.    The terms of the Sale to the Buyer, as set forth in the Asset Purchase Agreement, are fair and reasonable under the circumstances of this chapter 11 case and are hereby approved in all respects.

2.    The terms and conditions set forth in the Asset Purchase Agreement and the transaction(s) contemplated by the Asset Purchase Agreement, represent fair and reasonable terms and conditions, including the amount of the purchase price, and constitute the highest and best offer obtainable by the Debtor for the Purchased Assets and are fair and adequate.

3.    The consideration to be provided by the Buyer for the Purchased Assets pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) represents the highest and best offer for the Purchased Assets; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States of America, any state, territory, possession, and the District of Columbia for the Purchased Assets.

CINLibrary 0117166.0567650 1989670v6

4.     The Debtor has full and all necessary power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby to the Buyer; and, except as otherwise set forth herein and in the Asset Purchase Agreement, no further consents or approvals are required for the Debtor to consummate the transactions contemplated by the Asset Purchase Agreement.

5.     The Bid Procedures (as defined in the Motion) afforded a full, fair and reasonable opportunity for any entity to make a higher and better offer to purchase the Purchased Assets. The bid of the Buyer was determined to be the highest and best bid for the Purchased Assets.

6.     The Motion and the Asset Purchase Agreement should be approved in their entirety as they are in the best interests of the creditors of the Debtor and are in the best interests of the Debtor's chapter 11 bankruptcy estate.

7.     The Sale is not being entered into in order to escape liability for the debts of the Debtor's chapter 11 bankruptcy estate. The Debtor's chapter 11 bankruptcy estate is unable to otherwise satisfy the Debtor's debts.

G.     **Buyer is Not a Mere Continuation of the Debtor.**

1.     The Buyer is not a mere continuation of the Debtor or its chapter 11 bankruptcy estate and there is no continuity of enterprise between the Buyer and the Debtor or the chapter 11 bankruptcy estate of the Debtor.

2.     As of the date hereof, no common identity of current or former officers, incorporators, directors, equity holders or stockholders exists or has existed between the Buyer and the Debtor.

3.     The Sale is not being entered into fraudulently. As set forth herein, the Sale has been properly noticed to all parties required or entitled to receive notice of the Sale.

7

4.     The Buyer represents that it is not holding itself out to the public or to any party as a continuation of the Debtor.

5.     The Buyer is not, as a result of any action taken in connection with the purchase of the Purchased Assets or otherwise: (i) a successor to the Debtor; or (ii) has not, de facto or otherwise, merged or consolidated with or into the Debtor.

H.     **No Successor Liability**

1.     The Buyer does not constitute a successor of the Debtor or in the chapter 11 bankruptcy estate of the Debtor or of any of the officers, directors, shareholders or equity holders of the Debtor or any Affiliates of the Debtor.

2.     The Sale does not amount to a consolidation, merger or <u>de facto</u> merger of the Buyer and the Debtor or any of the Affiliates of the Debtor.

3.     The Buyer is a newly formed California limited liability company and is only buying the Purchased Assets, and as such, the Buyer is not a continuation of the Debtor or the Debtor's business operations.  Further, there is not substantial continuity between the Buyer and the Debtor, and there is no continuity of enterprise between the Debtor and the Buyer.  As fully disclosed in the Motion and to all parties in interest, the Buyer is affiliated with the DIP Term Lender.

I.     **Assumption and Assignment of the Assumed Contracts**

1.     The Debtor shall assume the Assumed Contracts and assign each of them to the Buyer pursuant to section 365 of the Bankruptcy Code free and clear of any and all Liens and Encumbrances (as defined below).  The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtor and the Debtor's chapter 11 bankruptcy estate, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the

8

Debtor. The assignment of the Assumed Contracts to Buyer pursuant to the Asset Purchase Agreement (i) are or will be legal, valid, and effective transfers of property or rights of or to the Assumed Contracts to Buyer; and (ii) vest or will vest Buyer with good and valid title, and all the right, title and interest of the Debtor in and to the Assumed Contracts free and clear of all Liens and Encumbrances.

2. The respective amounts set forth on Exhibit A hereto are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure any and all defaults and pay any and all actual pecuniary and non-pecuniary losses under the Assumed Contracts (the "Cure Amounts").

3. The Buyer has provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

4. The executory contracts and unexpired leases set forth on the attached Exhibit B are hereby deemed rejected effective as of the date of this Order.

J. **Section 363 Sale**

1. The Buyer contends that it would not have entered into the Asset Purchase Agreement and would not consummate the transaction(s) contemplated by the Asset Purchase Agreement if the Sale of the Purchased Assets to the Buyer and the assumption, assignment and sale of the Assumed Contracts to the Buyer, were not, except as otherwise specifically set forth herein and in the Asset Purchase Agreement, free and clear of any and all Liens and Encumbrances of any kind or nature whatsoever, or if the Buyer would, except as otherwise specifically set forth herein and in the Asset Purchase Agreement, or in the future could be liable for any of such Liens and Encumbrances or any other obligations and liabilities of the Debtor, including, but not limited to, Liens and Encumbrances or claims otherwise arising under

doctrines of successor liability in respect of the following (the following being referred to collectively as the "Successor Liability Documents, Statutes and Claims"): (1) any employment or labor agreements; (2) all deeds of trust and security interests; (3) claims, causes of action or suits related to any intellectual property rights being sold to the Buyer; (4) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (5) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973,, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with the Debtor or any predecessors; (6) environmental or other claims or Liens arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statute; (7) any bulk sales or similar law; (8) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (9) any theories of successor liability. For clarity, nothing in this Order or in the Asset Purchase Agreement releases, nullifies, precludes or

enjoins the enforcement of any liability owing to any governmental unit under any police or regulatory statute or regulation that the Buyer would be subject to, under applicable law, for acts or omissions related to the ownership of the Purchased Assets and the operation of the business of the Buyer from and after the Closing.

2.      Each of the provisions of section 363(f) of the Bankruptcy Code have been satisfied in all respects.

3.      Except as otherwise specifically set forth herein and in the Asset Purchase Agreement, with respect to any and all entities asserting any options, pledges, security interests, claims, equities, reservations, third party rights, voting trusts or similar arrangements, Liens, charges or other encumbrances or restrictions on or conditions to transfer or assignment of any kind (including, without limitation to the generality of the foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses, permits registrations and authorizations or approvals of or with respect to governmental units and instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated on or against the Purchased Assets (collectively, the "Encumbrances"), either: (i) such entity has consented to the sale and transfer, license and assignment, as applicable, of the Purchased Assets free and clear of its Lien and Encumbrance, with such Lien and Encumbrance to attach to the proceeds of such sale and transfer, license and assignment, as applicable, respectively; (ii) applicable nonbankruptcy law permits sale of the Purchased Assets free and clear of such Lien and Encumbrance; (iii) such Lien and Encumbrance is in bona fide dispute; or (iv) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Lien and Encumbrance, so that each of the conditions of section 363(f) of the Bankruptcy Code have been met with respect to the Sale and the Asset Purchase Agreement.

4.     The Buyer is not purchasing all of the Debtor's assets.  The Buyer is only purchasing the Purchased Assets and is not purchasing any assets other than the Purchased Assets.

5.     The Buyer is not assuming any of the Debtor's liabilities or Liens and Encumbrances, except as set forth in the Asset Purchase Agreement and except with respect to future amounts owing under the Assumed Contracts.

6.     The Debtor is assuming and assigning to the Buyer the Assumed Contracts identified on the attached Exhibit A that were noticed by the Debtor as being assumed and assigned to the Buyer pursuant to the *Notice of Debtor's Intent to Reject or Assume and Assign Certain Unexpired Leases and Executory Contracts and Setting forth the Cure Amounts* (the "Notice of Assumption or Rejection") that was served on all counterparties to any executory contract or unexpired lease that was either being assumed and assigned or rejected (Doc. No. 127).  The attached Exhibit B sets forth the executory contracts and unexpired leases that are being rejected as of the Closing.  All other executory contracts and leases of the Debtor not explicitly listed on either Exhibit A or Exhibit B of this Order shall be deemed rejected as of the Closing.

7.     The Cure Amounts set forth on Exhibit A of this Order reflect the agreement of certain of the Debtor's landlords to waive all or a portion of the Cure Amount owing to such landlord under its Assumed Contract in the event that the Buyer was determined to be the Successful Bidder at the Auction (the "Cure Amount Savings").  Those agreements are memorialized in certain side letters, copies of which were provided to Committee counsel at the Auction.  The portion of the Purchase Price that otherwise would have been used to pay the Cure

CINLibrary 0117166.0567650 1989670v6

Amount Savings shall instead be retained by the Debtor's estate and shall be held by the Debtor pending further order of the Court.

8.      Given all of the circumstances of this chapter 11 case and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the proposed Sale of the Purchased Assets to the Buyer constitutes a reasonable and sound exercise of the business judgment of the Debtor and should be approved by this Court.

K.      **Sale of Personally Identifiable Information**

1.      The Purchased Assets include personally identifiable information including: the name and address, telephone number, e-mail address, and information about products purchased from the Debtor.  Pursuant to sections 332 and 363(b)(1) of the Bankruptcy Code, a consumer privacy ombudsman (the "Ombudsman") was appointed by this Court (Doc. No. 120) to ensure that the sale of personally identifiable information would comply with applicable non-bankruptcy law.

2.      The Ombudsman's Report (Doc. No. 135) recommends the Sale of the personally identifiable information to the Buyer (the "Customer Records") based upon the following criteria: (a) although not a successor to the Debtor, the Buyer continues to operate the materially same type of business as the Debtor; (b) the Buyer intends to use the Customer Records for the same general business purposes as the Debtor; (c) the Buyer agrees that prior to both the Closing and/or making of any "material change" to the Berean Privacy Policy (as defined in the Ombudsman's Report), the Buyer will notify all consumers and afford them an opportunity to opt out; and (d) the Buyer agrees to comply with applicable non-bankruptcy law and to employ appropriate information security controls and procedures to protect the personally identifiable information.

CINLibrary 0117166.0567650 1989670v6

3.     An Opt Out Process (as defined in the Ombudsman's Report) will be undertaken prior to the Closing to allow customers to opt out of the sale of the Customer Records.  The opt out notices will be provided to customers via e-mail and notices will be placed on the Debtor's web site.  The notices will be sent and/or posted no later than July 29, 2009 and will require customers to opt out by 11:59 p.m. on July 31, 2009.

L.     **Miscellaneous**

1.     Any and all findings of fact and conclusions of law announced by this Court at the hearing to approve the Sale (the "Sale Hearing") are hereby incorporated herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     All objections to the Motion or the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservation of rights included in such objections, are hereby overruled in all respects on the merits and denied.

2.     All persons and entities are hereby forever prohibited and enjoined from taking any and all action against the Buyer or the Purchased Assets that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Purchased Assets to the Buyer in accordance with the terms of the Asset Purchase Agreement and this Order or otherwise interfere with the Buyer's use of the Purchased Assets after the Closing.

3.     The sale of the Customer Records complies in all respects with the requirements of section 363(b)(1) of the Bankruptcy Code and is hereby authorized and approved.  The Debtor is authorized to initiate the Opt Out process set forth above.

4.     The Asset Purchase Agreement, a copy of which was filed with this Court on July 27, 2009 (Doc. No. 134), is hereby approved in all respects, and shall be deemed in full force and

14

effect, binding and benefiting the Debtor, the Buyer and any and all parties in interest in this chapter 11 case.

5.      The Debtor is authorized, empowered and directed to execute and deliver to the Buyer the Asset Purchase Agreement and any and all other agreements contemplated thereby or reasonably requested by the Buyer, and to implement and consummate all of the transactions and perform all obligations contemplated by the Asset Purchase Agreement, including, without limitation, to sell the Purchased Assets to the Buyer and to assume and assign to the Buyer the Assumed Contracts, all on the terms of the Asset Purchase Agreement and herein, for the Purchase Price set forth therein, and determined in accordance with, the Asset Purchase Agreement and this Order. The Debtor is authorized, empowered and hereby directed to deliver special warranty deeds, bills of sale, assignments and other such documentation that may be necessary or requested by the Buyer in accordance with the terms of the Asset Purchase Agreement and this Order to evidence the transfers to the Purchaser required by the Asset Purchase Agreement and this Order.

6.      Upon the Closing, the Buyer shall take title to and possession of the Purchased Assets. Pursuant to Section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets and the Assumed Contracts shall be, except as otherwise specifically set forth herein and in the Asset Purchase Agreement, free and clear of any and all Liens and Encumbrances, including, without limitation, any claims pursuant to any successor or successor-in-interest liability theory. All Liens and Encumbrances shall attach solely to the proceeds of the Sale with the same validity and priority as they attached to the Purchased Assets.

7.      The Buyer is not a mere continuation of the Debtor nor does the Buyer constitute a successor to the Debtor or the current or former equity holders of the Debtor. Except as

15

otherwise set forth herein and in the Asset Purchase Agreement, the Buyer is not expressly or impliedly agreeing to assume any of the Debtor's liabilities, Liens and Encumbrances, the transactions contemplated by the Asset Purchase Agreement do not amount to a consolidation, merger or a de facto merger of the Debtor and the Buyer, the Buyer is not merely a continuation of the Debtor, and the transactions contemplated by the Asset Purchase Agreement are not being entered into fraudulently or in order to escape liability from the Debtor's debts or its creditors.

8.      This Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in, the Debtor (whether known or unknown), any holders of Liens and Encumbrances on the Purchased Assets, all governmental units with claims against the Debtor, the Attorney Generals of the various States where the Purchased Assets are located or where the Debtor conducted its business operations, all non-Debtor parties to the Assumed Contracts, all successors and assigns of the Buyer, the Debtor and its affiliates and subsidiaries, the Purchased Assets and any trustees, if any, subsequently appointed upon a conversion of this chapter 11 case to chapter 7 under the Bankruptcy Code of the Debtor's case.  This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtor, its estate, its creditors, the Buyer and their respective successors and assigns.

9.      Any  and all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, its successors and assigns, or the Purchased Assets, with respect to: (a) any Liens and Encumbrance arising under, out of, in connection with or in any way relating to the Debtor, the Buyer, the Purchased Assets, the operation of the Purchased Assets prior to the Closing of the sale of the

CINLibrary 0117166.0567650 1989670v6

Purchased Assets; or (b) any successor liability, including, without limitation, the following actions:

(i)     Commencing or continuing in any manner any action or other proceeding against the Buyer, its successors or the Purchased Assets;

(ii)     Enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Buyer, its successors or the Purchased Assets;

(iii)     Creating, perfecting or enforcing any Lien or other Encumbrance against the Buyer, its successors or the Purchased Assets;

(iv)     Asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Buyer or its successors or the Purchased Assets;

(v)     Commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or

(vi)     Revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

10.     Without limiting the generality of the foregoing, except as otherwise specifically set forth herein and in the Asset Purchase Agreement, the Buyer shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation debts, obligations, liabilities, judgments or consents of the Debtor arising pursuant to state law or otherwise.  This Order is intended to be all inclusive and shall encompass, but not be limited to, workers' compensation claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional

torts, acts of discrimination or other incidents, acts or injuries prior to the Closing, including, but not limited to, any and all workers' compensation claims filed or to be filed, or reopenings of those claims, by or on behalf of any of the Debtor's current or former officers, employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments or other obligations of any nature whatsoever of the Debtor relating in any way to workers' compensation liability.

11.    In addition, without limiting the generality of the foregoing, except as otherwise specifically set forth herein and in the Asset Purchase Agreement, the Buyer shall not assume or be obligated to pay, perform or otherwise discharge any debts, obligations and liabilities of the Debtor arising pursuant to the Debtor's ownership or operation of its businesses or business operations prior to the date of the Closing, including but not limited to, any successor liabilities in respect of the Successor Liability Documents, Statutes and Claims or otherwise.

12.    All entities that are in possession of some or all of the Purchased Assets on the Closing are directed to surrender possession of such Purchased Assets to the Buyer at the Closing.

13.    The Buyer shall not have any liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Purchased Assets.  Without limiting the generality of the foregoing, the Buyer shall not be liable for any Liens, Encumbrances and/or claims against the Debtor or any of its predecessors or affiliates or any of the current or former officers, directors or equity holders of the Debtor and its Affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the applicable Closing, now existing or

hereafter arising, whether fixed or contingent, with respect to the Debtor or any and all obligations of the Debtor arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing. The Buyer has given substantial consideration under the Asset Purchase Agreement for the benefit of the holders of Liens, Encumbrances and all parties in interest in this chapter 11 case. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Liens, Encumbrances and claims against the Debtor or the Purchased Assets.

14.     Upon the Closing of the Sale and the payment of the applicable Cure Amounts, as set forth on the attached Exhibit A, and except as otherwise provided in the Asset Purchase Agreement, the Debtor is authorized and directed to assume and assign each Assumed Contract to the Buyer free and clear of any and all Liens and Encumbrances. Such payments (if any) shall: (a) effect a cure of all defaults existing thereunder as of the Closing Date; (b) compensate for any actual pecuniary and non-pecuniary loss to such non-Debtor party resulting from such default; and (c) together with the assumption of the Assumed Contracts by the Buyer, constitute adequate assurance of future performance thereof. The Buyer shall then have assumed the Assumed Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtor of such Assumed Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts, neither the Debtor nor the Buyer shall have any further liabilities to the non-Debtor parties to the Assumed Contracts other than the Buyer's obligations under the

CINLibrary 0117166.0567650 1989670v6

Assumed Contracts that first become due and payable on or after the Closing for periods from and after the Closing and which do not relate to the period prior to the Closing.

15.     Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Assumed Contracts have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all rights, title and interest of the Debtor under the applicable Assumed Contract notwithstanding any provision in any of the Assumed Contracts or any applicable law (including, without limitation, provisions of the type described in sections 365(b)(2), (c)(1), and (f)(1) of the Bankruptcy Code) that prohibits, restricts, or conditions in any way such assignment or transfer including, but not limited to, change of control restrictions, radius restrictions, relocation provisions, payment, or liabilities triggered by the sale and/or assignment of the Assumed Contracts, or any portion thereof.  Any provisions of any lease of real property constituting an Assumed Contract that purports to permit the landlords thereunder to cancel the remaining term of such lease if the Debtor discontinues its use or operation of the leased real property is void and of no force and effect, and shall not be enforceable against the Buyer and any sublessees thereof, and the landlord under such lease shall not have the right to cancel or otherwise modify such lease or increase the rent, assert any claim or impose any penalty by

20

reason of such discontinuation, the Debtor's cessation of operations, the assignment of such lease to the Buyer or its assignee or the interruption of business activities at any of the leased premises.

16. Upon the Closing and the payment of the relevant Cure Amounts by the Debtor, the Buyer shall be deemed to be substituted for the Debtor as a party to the applicable Assumed Contracts and the Debtor shall be relieved from all liability on such Assumed Contracts arising after the Closing.

17. Upon the payment of the applicable Cure Amount, if any, and subject to the terms of the stipulation of the parties to any Assumed Contract filed with the Court, if any, including the agreements evidencing the Cure Amount Savings: (a) each Assumed Contract shall constitute a valid and existing interest in the property subject to such Assumed Contract; (b) none of the Debtor's rights will have been released or waived under any such Assumed Contracts; (c) the Assumed Contracts shall remain in full force and effect; and (d) no default shall exist under the Assumed Contracts, nor shall there exist any event or condition which, with the passage of time or the giving of notice, or both, would constitute such a default.

18. In connection with the opening and operating of a store, notwithstanding any provision in any of the Assumed Contracts, any reciprocal easement agreement, or any applicable law to the contrary, Buyer is authorized to (i) perform such alterations as may be necessary or desirable without the applicable landlord's approval as long as such alterations comply with applicable city codes; and (ii) allow the stores to remain dark or "go dark" for a period of up to nine (9) months after the Closing.

19. The Buyer has provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

CINLibrary 0117166.0567650 1989670v6

20.     There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to Buyer as a result of the assumption and assignment of the Assumed Contracts.

21.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assumed Contracts are forever barred and enjoined from raising or asserting against the Buyer or the Debtor's bankruptcy estate any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing or arising by reason of the Closing.

22.     The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code of the Purchased Assets and Assumed Contracts and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code with respect to the Sale.

23.     Pursuant to Rules 7062, 9014, 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure, this Order shall be effective immediately upon entry and the Debtor is authorized to close the Sale immediately upon entry of this Order.

24.     A Certified Copy of this Order may be filed with the appropriate Clerk and/or recorded with the Recorder to act to cancel the Liens and other Encumbrances of record.

25.     If any person or entity which has filed statements or other documents or agreements evidencing Liens and/or Encumbrances on, or interests in, the Purchased Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens and Encumbrances which the person or entity has or may assert with respect to the Purchased Assets, the Debtor, is hereby authorized and directed, and the Buyer is hereby

22

authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

26.     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Asset Purchase Agreement and the provisions of this Order.

27.     This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, taxing authorities, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, and each of whom is further directed to accept this Order as sole and sufficient evidence of the transfer of title of such Assumed Contracts to Buyer and such agency, department, or instrumentality may rely upon this Order in consummating the transactions contemplated herein.  All Liens and Encumbrances, including without limitation, any mechanic's liens, personal property tax liens, mortgages, deeds of trust, security agreements and security interests against the Debtor and/or the Debtor's estate of record as of the date of this Order shall forthwith, upon the occurrence of the Closing, be removed and stricken as against the Purchased Assets, including without limitation, the Assumed Contracts, without further order of this Court or act of any other court or party, and all parties are forever

barred, estopped, and permanently enjoined from asserting any such liens, claims, and/or encumbrances against Assignee or its successors or assigns.

28.     This Order constitutes authorization under all applicable jurisdictions' versions of the Uniform Commercial Code for the Buyer to file UCC termination statements with respect to all security interests in or liens on the Purchased Assets.

29.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

30.     The failure specifically to include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

31.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's chapter 11 bankruptcy estate.

32.     Except for the payment of obligations owing to the DIP Term Lender, which shall be paid in full at the Closing, and the Cure Amounts, the proceeds received by the Debtor upon the closing of the Sale (the "Sale Proceeds"), including the Cure Amount Savings, shall be held by the Debtor pending further orders of this Court.

33.     This Court shall retain jurisdiction over the transactions contemplated in the Asset Purchase Agreement and this Order for purposes of enforcing the provisions of this Order and

CINLibrary 0117166.0567650 1989670v6

the Asset Purchase Agreement. To the extent that any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

34. The terms of this Order shall be incorporated into any plan proposed in this chapter 11 bankruptcy case, and this Order and the Asset Purchase Agreement shall not be modified in any manner.

## AGREED AND CONSENTED TO:

| | |
|---|---|
| */s/ Kasey T. Ingram* | */s/ Ronald E. Gold* |
| Kasey T. Ingram (0075234) | Ronald E. Gold (0061351) |
| Kim Martin Lewis (0043533) | **FROST BROWN TODD LLC** |
| Patrick D. Burns (0081111) | 201 E. Fifth Street |
| **DINSMORE & SHOHL LLP** | Cincinnati, OH 45202 |
| 1900 Chemed Center | Telephone: (513) 651-6156 |
| 255 East Fifth Street | Facsimile: (513) 651-6981 |
| Cincinnati, Ohio 45202 | Email: rgold@fbtlaw.com |
| Telephone: (513) 977-8200 | |
| Facsimile: (513) 977-8141 | **ATTORNEYS FOR BEREAN** |
| Email: kasey.ingram@dinslaw.com | **CHRISTIAN STORES ENDEAVOR,** |
|      kim.lewis@dinslaw.com | **LLC** |
|      patrick.burns@dinslaw.com | |

**ATTORNEYS FOR THE DEBTOR
AND DEBTOR-IN-POSSESSION**

# # #

**Served Via Electronic Court Noticing:**
  **Kasey T. Ingram, Esq. - kasey.ingram@dinslaw.com**
  **Kim Martin Lewis, Esq. - kim.lewis@dinslaw.com**
  **Patrick D. Burns, Esq. - patrick.burns@dinslaw.com**
  **Monica V. Kindt, Esq. - monica.kindt@usdoj.gov**

**Debtor shall serve all other Notice Parties designated to receive notice.**

CINLibrary 0117166.0567650 1989670v6

**Berean Christian Stores**
**Exhibit A**

| Counterparty | Address | Contract | Status | Cure Amt |
|---|---|---|---|---|
| Cobblewood Plaza Investors, LP | c/o Neyer Real Estate Management<br><br>3927 Brotherton Road, Suite 200<br>Cincinnati, OH 45209 | Store Lease | Assume and Assign as Modified | $ 11,784.68 |
| Tom Kolp | c/o Kolp Development Corp.<br><br>326 Cleveland Ave. NW<br>Canton, OH 44702 | Store Lease | Assume and Assign as Modified | $ 13,743.78 |
| Claude L. Pennington, MD | c/o Murphy, Taylor & Ellis, Inc.<br>575 First St.<br>Macon, GA 31213 | Store Lease | Assume and Assign | $ 7,500.00 |
| Big Sky Floral Supply, LLC | Big Sky Floral Supply, LLC<br>502 N. 30th St.<br>Billings, MT 59101 | Store Lease | Assume and Assign | $ 7,613.15 |
| K.B. Enterprises | c/o Robert Jensen & Associates<br><br>2160 North Fine<br>Fresno, CA 93727-1539 | Store Lease | Assume and Assign as Modified | $ 14,151.88 |
| Pan Cal Princeton Plaza, LLC | Pan Cal Princeton Plaza, LLC<br><br>4125 Blackford Ave., #200<br>San Jose, CA 95117 | Store Lease | Assume and Assign as Modified | $ 11,419.98 |
| George Grinzewitsch, Sr. | c/o Estate of George Grinzewitsch, Sr.<br><br>1810 Howe Ave.<br>Sacramento, CA 95825 | Store Lease | Assume and Assign as Modified | $ 19,269.29 |

**Berean Christian Stores**
**Exhibit A**

| Counterparty | Address | Contract | Status | Cure Amt |
|---|---|---|---|---|
| Kearny Mesa Complex, LLC | c/o Pinnacle Realty<br><br>3333 Camino Del Rio South<br>San Diego, CA 92108 | Store Lease | Assume and Assign as Modified | $ 8,467.15 |
| Redlands Town Center LTC, CA Ltd. Partnership | c/o Coreland Companies<br>422 S. Corona Mall<br>Corona, CA 92879 | Store Lease | Undecided | $ 23,480.33 |
| Dunn Family Trust | Dunn Family Trust<br><br>1782 Terry Lynn Lane<br>Santa Ana, CA 92705 | Store Lease | Assume and Assign as Modified | $ 8,666.64 |
| John D. & Darlene H. Yoder | John D. & Darlene H. Yoder<br>14 South Tower Rd<br>New Holland, PA 17557-1595 | Store Lease | Assume and Assign | $ 3,894.00 |
| Franconia Mennonite Board of Missions & Charities | C/O Menno Realty Co.<br>771 Route #113<br>Souderton, PA 18964 | Store Lease | Assume and Assign | $ 16,516.00 |
| CCRP | c/o Lance-Kashian & Co.<br><br>11601 Wilshire Blvd., Suite 2060<br>Los Angeles, CA 90025-1956 | Store Lease | Assume and Assign as Modified | $ 34,142.48 |
| WGA Bel Billagio III, LP | c/o United Development Group, Inc.<br><br>9252 Chesapeake<br>San Diego, CA 92123 | Store Lease | Assume and Assign as Modified | $ 31,640.96 |

**Berean Christian Stores**
**Exhibit A**

| Counterparty | Address | Contract | Status | Cure Amt |
|---|---|---|---|---|
| Vestar Arizona XXVI | c/o Vestar Development Company<br><br>2425 East Camelback Rd., Suite 750<br>Phoenix, AZ 85016 | Store Lease | Assume and Assign as Modified | $ 19,315.37 |
| PERA Montrose, Inc | c/o CB Richard Ellis, Inc.<br>Market Square @ Montrose<br><br>200 Public Square, Suite 2560<br>Cleveland, OH 44114 | Store Lease | Assume and Assign as Modified | $ 6,907.21 |
| Arrowhead Palms, LLC | c/o Zell Commercial Real Estate Services, Inc.<br>5343 North 16th St., Suite 290<br>Phoenix, AZ 85016 | Store Lease | Assume and Assign | $ 25,666.36 |
| Dugan Financing, LLC | c/o Duke Realty Services Limited Partnership<br>Attn: Senior Property Manager<br><br>4555 Lake Forest Dr., Suite 400<br>Cincinnati, OH 45242 | Office Lease | Assume and Assign as Modified | $ 12,245.91 |
| Neopost Inc. | 30955 Huntwood Avenue<br>Haywood, CA 94544 | Office Equipment<br>Postage Meter Rental<br>Maintenance | Assume and Assign | $ 750.50 |
| Dell Financial Services | Dell Financial Services LLC<br>99355 Collections Center Drive<br>Chicago, IL 60693 | Office Equipment Lease<br>PE2950 Dell Server | Assume and Assign | $ 336.00 |
| Office Equipment Finance Services | Woodhull LLC<br>1310 Madrid Street Suite 101<br>Marshall, MN 56258 | Maintenance<br>Office Copier<br>Gestetner G460G Copier<br>Serial # K595080033 | Assume and Assign | $ 161.04 |

**Berean Christian Stores**
**Exhibit A**

| Counterparty | Address | Contract | Status | Cure Amt |
|---|---|---|---|---|
| Fidelity Investments | Fidelity Employer Services LLC<br>82 Devonshire St T3L<br>Boston, MA 02109 | Payroll Service Agreement | Assume and Assign | $0 |
| ComData Processing | c/o Kurt Presley<br><br>5301 Maryland Way<br>Brentwood, TN 37027 | Merchant Processing<br><br>Agreement | Assume and Assign as Modified | $0 |
| New Edge Networks | New Edge Networks<br>PO Box 4800, Unit 47<br>Portland, OR 97208 | Store #27 Lease<br>DSL Line | Assume and Assign | $    497.57 |
| Travelers Property and Casualty of America | c/o Hub International<br>1065 Avenue of the Americas<br>New York, NY 10018 | Commercial Ins Liability<br>General, Auto, Workman's<br>Comp & Umbrella | Assume and Assign | $0 |
| Insurance Co of the West | c/o Hub International<br>1065 Avenue of the Americas<br>New York, NY 10018 | Earthquake | Assume and Assign | $0 |
| AIG Executive Liability | c/o Hub International<br>1065 Avenue of the Americas<br>New York, NY 10018 | Director and Officier<br>Liability Coverage | Assume and Assign | $0 |
| Mutual of Omaha Insurance Co | Mutual of Omaha Plaza<br>Omaha, NE 68175 | Travel Insurance | Assume and Assign | $0 |

**Berean Christian Stores**
**Exhibit B**

| Counterparty | Address | Contract |
| --- | --- | --- |
| Russell's Heating & Air Conditioning | Russell's Heating & Air<br>33145 Yucaipa Blvd<br><br>PO Box 459<br>Yucaipa, CA 92399 | Redlands, CA #16<br><br>Heating & Air Maintenance<br>Service Agreement |
| Logic Consulting, LLC | Logic Consulting, LLC<br>1334 Thornberry Ct W SE<br>Grand Rapids, MI 49546 | Consulting |
| Terminix | 325 N Ponderosa Ave, Suite 1<br>Ontario, CA 91761 | Redlands, CA #16<br>Pest Control Agreement |
| United Parcel Service Inc. | United Parcel Services Inc.<br>500 Gest St<br>Cincinnati, OH 45202 | Freight Carrier Agreement |
| DMX | THP Capstar Acquisition Corp<br><br>DBA/ DMX<br>600 Congress Ave Suite 1400<br>Austin TX 78701 | In-Store Music Service<br>Agreement |

| | | |
|---|---|---|
| RMA Fleet Inc | RMA Fleet INC.<br>Po Box 62012<br>Cincinnati, OH 45262-0012 | Trailer Lease |
| Qwest Total Advantage | QCC<br>1801 California Street<br>Suite 900<br>Denver CO 80202 | #26 T-1<br>Qwest Total Advantage<br>Agreement |
| Cincinnati Bell | CBAD<br>221 East Fourth Street<br>Cincinnati OH 45202 | Home Office Fax Machine<br>Service Agreement |
| Cincinnati Bell | CBT<br>201 East Fourth Street<br>Cincinnati OH 45202 | Home Office<br>Zoomtown DSL<br>Service Agreement |
| Cincinnati Bell | CBT<br>221 East Fourth Street<br>Cincinnati OH 45202 | #02 Cincinnati Store Lines<br>Flat Line Service<br>Service Agreement |

**Cincinnati Bell**

CBAD

221 East Fourth Street
Cincinnati OH 45202

Home Office Phone Lines

Service Agreement

---

**Bill Simmons**

9415 Meridian Way
West Chester, OH 45069

Employment Contract

---

**Thomas Long**

9415 Meridian Way
West Chester, OH 45069

Employment Contract

---

**Four Star Mechanical**

4127 Tonya Trail
Hamilton, OH 45011

HVAC Maintenance Agree
SSC

---

**Mauzy Heating and Air Conditioning**

7408 Princes View Dr
Suite D

San Diego, CA 92120

HVAC Maintenance
San Diego

| | | |
|---|---|---|
| Copy Care of San Diego | 2122 Auto Park Way<br>Escondido, CA 92029 | Copier Maintance<br>San Diego |
| Dr Pepper Snapple Group | 501 Legacy Dr<br>Plano, TX 75024 | Vending Machine |
| Cintas | Cintas #009<br>27 Whitney Drive<br>Milford, OH 45150 | Janitorial Supplies |
| Orangefair Market Place, LLC | c/o Summit Team<br>17165 Newhope Street, Suite H<br>Fountain Valley, CA 92708 | Store Lease |
| DAB Investments - Southport Commons, LLC | c/o Jan Chenoweth<br>7399 Shadeland VE, PMB #166<br>Indianapolis, IN 46250 | Store Lease |
| St Mathews Pavilion, LLC | c/o Mulloy Properties, Inc.<br>200 South 5ht Street, suite 400 N<br>Louisville, KY 40202 | Store Lease |
| ADT Security Services, Inc. | 14200 E. Exposition Ave<br>Aurora, CO 80012 | Security Services Contract |